GEORGE H. STEVENS, APPELLANT, v. RICHARD D. SHAW ET AL., APPELLEES.

136 N. W. 2d 169

Filed July 9, 1965. No. 35915.

Chambers, Holland, Dudgeon & Hastings, for appellant.

Kier, Cobb & Luedtke and Janice L. Gradwohl, for appellee Shaw.

Stewart, Calkins & Duxbury, for appellee Capital Cab Co.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

This is an action in tort for damages for personal injuries sustained by George H. Stevens, the plaintiff and appellant, in an automobile collision between a cab driven by him for the Capital Cab Company and an automobile driven by the defendant and appellee Richard

D. Shaw. The Capital Cab Company, a corporation, appellee and defendant, filed an answer alleging defendant Shaw's negligence and asking to recover that which it had paid the plaintiff as its employee under the workmen's compensation law.

A trial to a jury in the district court for Lancaster County resulted in a verdict and judgment in favor of the defendant Shaw. Plaintiff's motion for a new trial being overruled, he has brought the cause to this court by appeal.

The parties will be designated as they were in the trial court and the defendant when used will refer to Richard D. Shaw.

The plaintiff assigns only one error to the trial court which is that it submitted on its own motion the issue of the comparative negligence of the plaintiff to the jury by instruction No. 6. No objection is made to the form of the instruction but it is contended there was no evidence justifying the submission of the issue.

The accident resulting in the plaintiff's injuries occurred about 2 o'clock p.m., on January 11, 1963, in Lincoln, Nebraska. The plaintiff, a driver for Capital Cab Company, was delivering a passenger, Mrs. Mildred Bodkin, a regular customer, from her place of employment to her home. Her residence was at 2225 Holdrege Street, on the south side thereof in the middle of the block. Holdrege Street is a paved arterial street protected by stop signs. It runs east and west. It is only 30 feet wide and has two lanes. A dividing line is painted thereon by which 17 feet are allotted to westbound and 13 feet to eastbound traffic. The streets that day, however, were covered with snow and were icy and slippery. A blizzard was in progress and visibility was greatly restricted. The plaintiff testified at trial he could see one-half block ahead at the time, but in a previous deposition he had said his vision was curtailed to 50 feet only. The defendant was alone, driving from work to his home in a 1955 Mercury 2-door.

Both vehicles proceeded northward on Seventeenth Street until its intersection with Holdrege Street. The plaintiff's cab passed the Mercury car on Seventeenth Street. Both turned and proceeded east on Holdrege Street. The defendant had noticed the cab as it passed on Seventeenth Street but did not observe it again until within 40 feet of the accident. The plaintiff testified he had driven at the rate of from 20 to 25 miles per hour. He slowed the cab on approaching his passenger's residence and stopped 15 or 20 feet back of the walk leading out from her home because, as he said, traffic slowed in front of the cab. Starting up again he moved at 5 miles per hour to the entrance walk and stopped alongside the curb. He did not recall applying his brakes in this movement but said he might have flashed the lights. The right turn indicator was on. The cab was equipped with red stoplights at the rear which he said were operating. While in the process of opening the door for his passenger, the cab was struck from the rear by the defendant's automobile. His passenger was getting ready to pay her fare at that time. There is some conflict concerning the force of the impact. There is evidence that it was not great and did not move the cab forward. It did knock off the plaintiff's hat which was thrown into the back seat. According to both plaintiff and defendant there was traffic in the north lane coming from the east, going west.

The passenger, Mrs. Bodkin, testified there was no traffic in front of the cab coming or going when they stopped. She said she paid attention because she was a back seat driver. She testified the cab was right next to the curb and she was reaching for her fare when the collision occurred.

The defendant said he did not remember whether his lights were on. He testified he drove 20 miles per hour up Holdrege Street but had slowed to 10 miles per hour before the accident. He saw the cab 40 feet before the impact. On noticing the cab's brake lights go on he

pumped his brakes to avoid skidding but his automobile did skid. The cab had stopped half a second before. Both vehicles appear to have been in good mechanical condition.

The plaintiff stated that at the time of the accident the south side of Holdrege Street was posted, "no stopping, no parking at any time." There is no further evidence developing this statement or which related to any such signs. Exhibit 10 introduced in evidence is a picture of the home of Mrs. Bodkin. It was taken from directly across the street at another time when there was no snow. It shows a driveway between Mrs. Bodkin's home and that to the west of it. There is no testimony as to whose drive it was nor of its condition on the day of the accident. Plaintiff says he was not familiar with the drives into homes.

The defendant pleaded and made proof of section 10.32.220 of the Lincoln municipal code which reads as follows: "Operation of vehicle in careless, reckless or negligent manner. It shall be unlawful for any person to drive, use, operate, park, cause to be parked, or stop any vehicle (a) in a careless manner, or (b) in a reckless manner, or (c) in a negligent manner, or (d) in such a manner as to endanger life, limb, person or property, or (e) in such a manner as to endanger or interfere with the lawful traffic or use of the streets, or (f) in such a condition as to endanger or interfere with the lawful traffic or use of the streets."

The allegation of negligence claimed by the defendant against the plaintiff and submitted to the jury was in stopping his vehicle in such a manner and place as to endanger or interfere with the lawful traffic on the street. The question presented by the plaintiff's appeal, therefore, is whether or not the evidence is sufficient as a matter of law to submit the issue of comparative negligence to the jury. In Wolstenholm v. Kaliff, 176 Neb. 358, 126 N. W. 2d 178, this court in its syllabi stated: "Negligence must be proved by direct evidence, or by

facts from which negligence can reasonably be inferred. * * * Negligence is a question of fact and may be proved by circumstantial evidence and physical facts. However the law requires that the facts and circumstances proved, together with the inferences that may properly be drawn therefrom, indicates with reasonable certainty the negligent act charged."

Contributory negligence is ordinarily an affirmative defense and the burden of proving it is on the party asserting it. Cawthra v. Shackelford, 176 Neb. 147, 125 N. W. 2d 186.

The theory of the defendant is that an issue of comparative negligence sufficient to make it a question of fact for the jury arises from the plaintiff's stopping even momentarily when a blizzard was in progress and visibility limited to 50 feet or less. He calls attention to the icy street, the approaching traffic coming from the east, and the street being posted no parking and no stopping. He urges that under the circumstances the momentary stopping was negligent.

Defendant relies also on the ordinance of the city herebefore set forth. Reading the ordinance carefully it appears it does not purport to prohibit either parking or stopping a vehicle under all circumstances. It is only when either is done in a careless, reckless, or negligent manner, or in such a manner or in such a condition as to endanger life, limb, person, or property, or endanger or interfere with the lawful use of the streets. Stopping but for a moment in a snowstorm on icy streets would not involve risk to the defendant had his car been under his control as contemplated by the law and set out by the rules of this court. "The existence or presence of smoke, snow, fog, mist, blinding headlights, or other similar elements which materially impair or wholly destroy visibility are not to be deemed intervening causes but rather as conditions which impose upon the drivers of automobiles the duty to assure the safety of the public by the exercise of a degree of care commensurate

with such surrounding circumstances." Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250.

In Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., 161 Neb. 152, 72 N. W. 2d 669, this court considered and construed section 39-757, R. R. S. 1943, which was there applicable and provides in part as follows: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway; Provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction upon such highway." This court in the cited case reviewed the authorities there collected concerning temporary stopping or parking on the highway under various conditions. It said in its opinion: "We think this statute was not intended to prohibit a momentary stoppage on the paved portion of the highway under proper circumstances for a normal and reasonable purpose. A like statute was fully, and we think correctly, analyzed in Peoples v. Fulk, 220 N. C. 635, 18 S. E. 2d 147. Therein the court said: 'The temporary stop of the bus on the hard surface portion of the highway to take on a passenger did not constitute a violation of sec. 123(a), ch. 407, Public Laws 1937, which provides that "no person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or im-

proved or main traveled portion of such highway." * * * ' "Park" or "leave standing" means something more than a mere temporary or momentary stop on the road for a necessary purpose. S. v. Carter, 205 N. C., 761, 172 S. E., 415; Stallings v. Transport Co., 210 N. C., 201, 185 S. E., 643, 42 C. J., 614, 2 Blashfield Cyc. Auto L. & P., 332, and cases cited; Billingsley v. McCormich Transfer Co., 228 N. W., 424 (N. D.); Axelson v. Jardine, 223 N. W., 32 (N. D.); Dare v. Bass, 224 Pac., 646; Kastler v. Tures, 210 N. W., 415 (Wis.); Henry v. S. Liebovitz & Sons, 167 Atl., 304 (Pa.); American Co. of Ark. v. Baker, 60 S. W. (2d), 572 (Ark.); Dolfosse v. Oil Co., 230 N. W., 31 (Wis.). Starting and stopping are as much an essential part of travel on a motor vehicle as is "motion." Stopping for different causes, and according to the exigencies of the occasion, is a natural part of the "travel." The right to stop when the occasion demands is incident to the right to travel. Fulton v. Chouteau County Farmers Co., 32 Pac. (2d), 1025; Morton v. Mooney, 33 Pac. (2d), 262.' See, also, Leary v. Norfolk Southern Bus Corp., 220 N. C. 745, 18 S. E. 2d 426; Fritz v. York Motor Express Co., 358 Pa. 398, 58 A. 2d 12; Naylor v. Dragoon, 116 Vt. 552, 80 A. 2d 600; American Co. of Arkansas v. Baker, 187 Ark. 492, 60 S. W. 2d 572."

In Peterson v. Skiles, 173 Neb. 470, 113 N. W. 2d 628, this court in construing section 39-757, R. R. S. 1943, stated: "In LaFleur v. Poesch, 126 Neb. 263, 252 N. W. 902, this court quoted the following with approval from Grubbs v. Grayson, 165 Wash. 548, 5 P. 2d 1033: 'The statutes are not violated if there is proper excuse or a necessity for stopping an automobile upon the highway, and a reasonable effort is made to get it entirely off the traveled portion of the road or as nearly so as circumstances will permit.' "

We think the question before us related to the excuse or necessity of the plaintiff stopping his cab to allow his passenger to alight. The evidence shows without refutation that the plaintiff did not stop suddenly or

fail to give a proper signal. His cab came to rest right against the curb. Except for the width of the cab the 30-foot width of the street remained unobstructed by the plaintiff's vehicle. The stop was momentary. It is apparent, moreover, that the ensuing blizzard and the icy street did not obviate or lessen but increased the responsibility of the plaintiff to deliver his lady passenger safely to her home. We do not consider the remark of the plaintiff, that he knew the street was posted no parking or stopping, standing alone, is significant. There was no evidence amplifying the statement. The burden of proof was on the defendant to show its pertinence here. It is to be implied that the ordinance pleaded and offered in proof was the only portion of the municipal code defendant found applicable. Although a municipal ordinance prohibits parking or stopping in a careless, reckless, or negligent manner, a cabdriver who momentarily stops his vehicle in a blizzard on his extreme right-hand side of an icy street 30 feet wide to allow a lady passenger to alight in front of her home is not guilty of contributory negligence by reason of the stopping alone, as a sufficient necessity for his action is shown. We have not found and the defendant does not point out other negligent acts attributable to the plaintiff. The trial court erred in submitting the issue of comparative negligence.

It follows that the judgment of the trial court should be reversed and the cause remanded for a new trial in accordance with this opinion.

REVERSED AND REMANDED.